## (December 28, 1978)

■ JACK E. POST et al., Respondents, v MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Appellants.—Order, Supreme Court, New York County, entered December 27, 1977, denying defendant's motion and plaintiffs' cross motion for summary judgment, unanimously modified, on the law, by reversing so much thereof as denied defendant's motion, motion granted and otherwise affirmed, without costs and without disbursements. Plaintiffs Post and Maney entered into the employ of the defendant on April 29, 1959 and May 15, 1961 respectively. The employment of both plaintiffs ceased on August 30, 1974. There is a dispute in the record as to whether they were fired or whether they resigned. In September of 1974, the plaintiffs went to work for Bache & Company. On November 25, 1975, the administrative committee of defendant's pension plan determined that the plaintiffs had forfeited all benefits under the plan by entering the employ of a competitor, Bache. In their first cause of action, the plaintiffs seek to recover benefits wrongfully terminated and forfeited by the defendant under the profit sharing and the pension plans. In the second cause, they request damages for the substandard compensation they have received over the years from the defendant as a result of their reliance upon the defendant's promise to pay them profit sharing and pension benefits. While the plaintiffs alleged in their complaint that their employment was wrongfully terminated, they do not come forward in their affidavits with any facts suggesting that the defendant did not have the right to discharge them at will. Therefore, even if it were assumed that the plaintiffs were discharged, there is no proof that such discharge was wrongful, or that it in any way affected their present right to claim benefits. Our inquiry is thus limited to the more narrow issue of whether the plaintiffs, on the cessation of their employment with the defendant, were wrongfully deprived of benefits then due to them under the terms of their employment. The defendant is now in the process of winding up the profit sharing plan. It is undisputed that the plaintiffs have been paid their profit sharing benefits less a 4% reserve that is being

held for contingencies. The plaintiffs have been paid interest on that reserve and there is every indication that the reserve will be distributed upon the termination of all litigation relating thereto. Hence, the plaintiffs' claim with regard to the profit sharing benefits is rather academic. Furthermore, article 20.1 of the profit sharing plan provides that: "The Plan is purely voluntary on the part of the Corporation and the Corporation reserves the right to terminate the Plan and to discontinue contributions hereunder at any time." In light of this very clear language, there is no merit to plaintiffs' contention that the defendant did not have the right to terminate the profit sharing plan unilaterally. *(Silfen v United Whelan Corp.,* 30 AD2d 523, affd 26 NY2d 712). Article 7.1 of the pension plan provides as follows: "A participant who enters employment or engages directly or indirectly in any business deemed by the Committee to be competitive with the business of any Employer or any Subsidiary shall forfeit all rights to any benefits due or to become due from the Trust Fund, other than those attributable to Voluntary Contributions." The plaintiffs do not contest the fact that, upon leaving the defendant's employ, they went to work for a competitor, Bache and Company. Consequently, the administrative committee acted within its prerogative in forfeiting the plaintiffs' pension benefits. *(Kristt v Whelan,* 4 AD2d 195, affd 5 NY2d 807; *Smith v Meyer,* 78 Misc 2d 711, affd 44 AD2d 778, mot for lv to app den 34 NY2d 517.)* Moreover, the documentation submitted indicates that the defendant did not waive its right to enforce the forfeiture provision in the pension plan. Article 8.3 of the plan provides as follows: "The Committee shall have complete control of the administration of the Plan with all powers necessary to enable it properly to carry out its duties in that respect. Without limiting the generality of the foregoing, the Committee shall have the power to interpret and construe the Plan, to determine all questions of eligibility and of the status and rights of Participants and others and, in general, to decide any disputes arising hereunder. All disbursements by the Trustee, except for the ordinary expenses of the administration of the Trust Fund, shall be made upon the written instructions of the Committee." On August 20, 1975, plaintiffs' counsel wrote a letter to the defendant's director of personnel that ends with the following request: "Please furnish me at your convenience information as to the vested interest, if any, of each employee and the basis of determining same." The manager of defendant's pension administration division, in a letter to counsel dated August 29, 1975, stated that the plaintiffs "are entitled to benefits under the Pension Plan". At the time of the manager's communication, the defendant was aware that the plaintiffs were working for Bache. However, the manager's letter was an accurate response to counsel's request for information. His letter merely confirmed that the plaintiffs had certain vested benefits under the plan. The manager did not explore the issue of forfeiture since this matter was not within his sphere of authority. In short, the defendant did not relinquish its right to enforce the forfeiture provision because the administrative committee, the entity charged with the power of approval and disapproval, did not consider and pass upon plaintiffs' applications for benefits until November, 1975. As was noted by the court at Special Term, the Employee Retirement Income Security Act (US Code, tit 29, § 1001 *et seq.)* is not controlling in this proceeding since the plaintiffs' employment ceased prior to the act's effective date of September 2, 1974 *(Martin v Bankers Trust Co.,* 417 F Supp 923, affd 565 F2d 1276). In view of the fact that the defendant's action has fallen within the parameters of the profit sharing and pension plans, there is no substance to plaintiffs' claim under the second cause that they have been paid substandard wages because

the defendant had reneged under those plans. Concur—Murphy, P. J., Lupiano, Markewich and Sullivan, JJ.

Sandler, J., concurs in a memorandum, as follows: If it were a matter of first impression, I would strike down as an unreasonable and invalid restraint that part of the pension plan that authorizes forfeiture of vested pension rights upon a finding that a participant engaged in a business deemed competitive with the employer. However, as correctly observed in the opinion of the court, such provisions have been previously upheld in a line of cases starting with *Kristt v Whelan* (4 AD2d 195, affd 5 NY2d 807), and although the application of the forfeiture provision here seems to me more offensive than was true in the earlier cases, the distinction does not seem to me sufficiently pronounced to justify a departure at this time.